UNION OF STATE, COUNTY AND MUNICIPAL WORKERS OF OHIO, Appellant,

v.

OHIO COUNCIL 8, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES AFL–CIO, LOCAL 1746 et al., Appellees.

[Cite as *Union of State, Cty. & Mun. Workers of Ohio v. Ohio Council 8, AFSCME, AFL–CIO, Local 1746* (1999), 136 Ohio App.3d 147.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–54.

Decided Dec. 28, 1999.

*Frank Consolo,* for appellant.

*Sean Grayson,* for appellee AFSCME.

*James Wilkins* and *Jeffrey J. Weber,* for appellee Cuyahoga County

*Betty D. Montgomery,* Attorney General, and *Dennis R. Morgan,* Assistant Attorney General, for intervenor-appellee State Employment Relations Board.

---

DESHLER, Judge.

Appellant, Union of State, County and Municipal Workers of Ohio ("USCMWO"), appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the State Employment Relations Board ("SERB") dismissing appellant's "petition for representation election."

The following facts are taken in part from the trial court's November 27, 1998 decision and SERB's April 30, 1998 directive and opinion. The Cuyahoga County Department of Human Services ("DHS") is a "public employer" as defined under R.C. 4117.01(B). Appellant is an "employee organization" as defined under R.C. 4117.01(D). Appellee, Ohio Council 8, American Federation of State, County and Municipal Employees, AFL–CIO, Local 1746 ("AFSCME"), is also an "employee organization."

DHS is comprised of three divisions (the Division of Children and Family Services, the Division of Entitlement/Employment and the Division of Senior and Adult Services). A division director, who reports to the DHS director, manages each division.

On September 25, 1996, appellant filed a petition for representation election, pursuant to R.C. 4117.07(A) and Ohio Adm.Code 4117–5–01(C), seeking to represent a unit of Social Service Worker 3s ("SSW3s") and Social Service Worker 4s ("SSW4s") employed by the Cuyahoga County Division of Children and Family Services. Appellant subsequently indicated that it no longer had an interest in representing SSW4s.

Since at least 1972, AFSCME has been the "deemed certified" exclusive representative of a "wall-to-wall" bargaining unit of DHS employees. The trial court noted that a deemed certified collective bargaining agent is an employee organization that bargained with an employer on behalf of public employees in a collective bargaining relationship predating R.C. Chapter 4117, the Ohio Public Employees' Collective Bargaining Act ("Act"), effective April 1, 1984. Thus, rather than being certified by SERB according to the normal certification procedure provided for under the Act, such units were deemed certified by the grandfather clause of Section 4(A) of Am.Sub.S.B.No. 133.

Since 1971, the SSW3 classification has been included in the bargaining unit represented by AFSCME and exists within each of the three divisions of DHS. No other employee organization currently represents DHS employees.

On October 10, 1996, AFSCME filed a motion to dismiss appellant's petition, asserting that appellant's petition did not constitute an appropriate challenge to the deemed certified unit. On December 12, 1996, SERB denied AFSCME's motion to dismiss and directed the matter for a hearing to determine whether the severance of SSW3s from the existing unit was appropriate.

A hearing officer conducted a hearing beginning August 6, 1997. The hearing officer issued a recommended determination on October 24, 1997, finding that appellant's petition did not constitute an appropriate challenge to the existing bargaining unit. Thus, the hearing officer recommended that SERB issue an order dismissing appellant's petition for representation election. Appellant filed exceptions to the hearing officer's recommendation. AFSCME and the employer filed responses to appellant's exceptions. By directive filed on April 30, 1998, SERB dismissed appellant's petition for representation election.

On May 14, 1998, appellant filed a notice of appeal with the trial court from SERB's directive and opinion. The trial court subsequently granted SERB's motion to intervene pursuant to Civ.R. 24.

By decision filed November 27, 1998, the trial court affirmed SERB's directive dismissing appellant's petition for representation election. The decision of the trial court was journalized by judgment entry filed December 16, 1998.

On appeal, appellant sets forth the following three assignments of error for review:

"I. SERB erred by not finding that the rival's (USCMWO) petition does constitute an appropriate challenge to the deemed certified incumbent (AFSCME).

"II. SERB erred by not finding that when a rival union petitions for a bargaining unit which is encompassed within but less than coterminous with an existing bargaining unit represented by a deemed certified incumbent union, SERB must utilize the same analysis as in an original unit determination *i.e.* the factors in R.C. 4117.06(B).

"III. SERB erred by not finding that a unit composed of all Social Worker 3's employed in DCFS is an appropriate bargaining unit."

██ In reviewing a decision of SERB, the trial court, pursuant to R.C. 119.12, is required to determine whether the decision was supported by "reliable, probative, and substantial evidence and is in accordance with law." An appellate court's review of an administrative decision is more limited than the trial court; the appellate court "is to determine only if the trial court has abused its discretion." *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.

Appellant's assignments of error are interrelated and will be discussed together. The primary issue raised by appellant is whether the trial court erred in upholding SERB's determination that appellant's petition for representation election did not constitute an appropriate challenge to AFSCME's deemed certified unit. As noted under the facts, appellant's petition seeks to represent, or in effect, sever a unit of SSW3s from a larger, pre-existing deemed certified bargaining unit currently representing these employees.

■ A bargaining unit is deemed certified under Section 4(A) of Am.Sub. S.B.No. 133, and "bargaining units that existed prior to October 6, 1983 (the effective date of Section 4(A)) * * * are deemed certified by SERB until another employee organization challenges the incumbent employee organization." *Ohio Council 8, AFSCME v. State Employment Relations Bd.* (Sept. 30, 1998), Summit App. No. 18829, unreported, 1998 WL 668265.

In its opinion dismissing appellant's petition for representation election, SERB initially concluded that Section 4(A) does not prohibit severance from a deemed certified bargaining unit. Section 4(A) states:

"(A) Exclusive recognition through a written contract, agreement, or memorandum of understanding by a public employer to an employee organization whether specifically stated or through tradition, custom, practice, election, or negotiation the employee organization has been the only employee organization representing all employees in the unit is protected subject to the time restriction in division (B) of section 4117.05 of the Revised Code. Notwithstanding any other provision of this act, an employee organization recognized as the exclusive representative shall be deemed certified until challenged by another employee organization under the provisions of this act and the State Employment Relations Board has certified an exclusive representative."

■ SERB further determined that the proper standard to evaluate a severance petition involving a group of employees within an existing deemed certified unit was that set forth in *Ohio* (June 30, 1995), SERB 95–012. In *Ohio,* SERB adopted the following standard to allow severance of an employee group from an existing bargaining unit:

"Where a petition for election is filed to sever a group of employees from an existing bargaining unit, the Board will allow such severance only if the petitioner proves that:

"(1) Since the establishment of the existing unit, substantial changes have taken place in the classifications, job duties, working conditions, or other circumstances of the petitioned-for employees making the existing unit inappropriate or unworkable; or

"(2) Since the establishment of the existing unit, substantial changes in circumstances have taken place showing the existence of a conflict of interest between the petitioned-for employees and other employees in the unit making the existing representation inadequate; or

"(3) Since the establishment of the existing unit, substantial changes have taken place in the employer's operations or administrative structure making the existing unit inappropriate or unworkable; or

"(4) The history of collective bargaining in the existing unit shows inadequate representation of the petitioned-for employees and disparity in the quality of representation provided to them as distinguished from that provided to the other employees in the unit."

In considering the application of the above criteria to the facts of the instant case, SERB held that:

"The record does not contain any evidence that the requisite 'substantial changes' have occurred or that the history of collective bargaining in the unit shows inadequate or disparate representation. The relationship between AFSCME, on behalf of SSW3s, and DHS has been constructive, orderly, and mutually beneficial. SSW3s have served as officers and stewards of AFSCME since its inception. In addition, since at least 1984, SSW3s have been members of AFSCME's negotiating committees and regularly have been appointed to serve on labor/management committees as well as internal AFSCME committees. AFSCME also has filed and resolved numerous grievances on behalf of SSW3s. AFSCME has engaged in discussions with the County's Office of Labor Relations concerning issues specifically impacting on employees within the Social Service Worker classification."

In the proceedings before the hearing officer, appellant stipulated that it could not carry its burden of proof with respect to the standard set forth in *Ohio*. Appellant argued, however, as it does on appeal, that the standard in *Ohio* should be limited to cases involving board certified bargaining units as opposed to cases involving deemed certified bargaining units. The hearing examiner rejected appellant's argument, noting that, in *Ohio*, SERB indicated that the standards adopted were to be applied "[w]here a petition for election is filed to sever a group of employees from an existing bargaining unit," making no distinction between whether the existing unit is board certified or deemed certified. The hearing examiner further noted language in *Ohio* in which SERB stated that "we adopt the standard set forth herein for all severance cases."

We find unpersuasive appellant's contention that the rationale of *Ohio* must be distinguished from the instant case because it involves a deemed certified bargaining unit rather than a board certified unit. In *State ex rel. Brecksville*

*Edn. Assn., OEA/NEA v. State Emp. Relations Bd.* (1996), 74 Ohio St.3d 665, 666, 660 N.E.2d 1199, 1200, fn. 1, the Ohio Supreme Court noted the following regarding the legislative intent surrounding bargaining units deemed certified by the Ohio Collective Bargaining Act:

"Also known as a 'historical unit,' a deemed certified collective bargaining agent is the employee representative who bargained with the employer on behalf of public employees in a collective bargaining relationship that predated the passage of the Ohio Collective Bargaining Act. Rather than being certified by SERB according to the normal certification procedure provided for under the Act, such units were 'deemed certified' by the grandfather clause of Section 4(A) of Am.Sub.S.B. No. 133, and are treated as if they had been certified normally. See Drucker, Collective Bargaining Law in Ohio (1993) 199, Section 5.02(D)."

Similarly, in *Ohio Council 8, AFSCME, AFL–CIO v. Cincinnati* (1994), 69 Ohio St.3d 677, 681–682, 635 N.E.2d 361, 364, the court recognized that:

" '[W]hen enacted, the [Ohio Public Employees' Bargaining] Act contained special uncodified or temporary provisions that related to historical *units and* bargaining relationships. The effect, in part, of these provisions was to preserve the units, agreements, and bargaining structures that existed prior to April 1, 1984 [the effective date of R.C. 4117.05 *as enacted* by the Act]. By operation of Section 4 of these temporary provisions, *existing units* were preserved in their original, pre-Act form, and public employers have been required to pursue bargaining relationships with the exclusive representatives of these units as if there had been a SERB-certified election and designation of bargaining agent.' (Emphasis added; footnotes omitted.) Drucker, Collective Bargaining Law in Ohio, supra, at 233–234, Section 5.18(A). 'The unions and *units* thus were referred to as having been "grandfathered" into their certification rights * * *.' (Emphasis added.) Id. at 244, Section 6.02(c).

"Section 4 of Am. Sub. S.B. No. 133, therefore, was clearly ' "designed to maintain the status quo in those public sector employer/employee collective bargaining relationships antedating April 1, 1984." ' *State Emp. Relations Bd. v. Bedford Hts.* (1987), 41 Ohio App.3d 21, 23, 534 N.E.2d 115, 117, quoting *In re Bedford Hts.* (July 24, 1987), SERB 87–016, at 3–56. 'It is clear from the emphasized language of Section 4 of the Act that the legislature intended that those bargaining units in existence on October 6, 1983 [the effective date of Section 4], would remain intact.' (Emphasis added.) *Univ. of Cincinnati, Univ. Hosp. v. State Emp. Relations Bd.* (1988), 42 Ohio App.3d 78, 81, 536 N.E.2d 408, 411."

■ As noted in the language cited above, the Ohio Supreme Court has recognized the legislative intent to afford protection to collective bargaining

relationships already in effect at the time of enactment of the Public Employees' Collective Bargaining Act. In light of the clear statutory intent to protect deemed certified collective bargaining units, and to treat them "as if they had been certified normally," appellant's contention that deemed certified bargaining units should be afforded less protection than board certified bargaining units in severance challenges is not well-taken.

Appellant also contends that SERB erred in not utilizing in the instant case the same factors applicable in a case involving an original unit determination, *i.e.*, the factors set forth in R.C. 4117.06(B). At the heart of this issue is whether the trial court erred in upholding SERB's determination that the proper standard to be applied in a challenge by a representative seeking to sever a group of employees from an existing deemed certified unit is the standard set forth in *Ohio*.

In upholding SERB's application of the factors in *Ohio*, the trial court held:

"The purpose of R.C. Chapter 4117 is to minimize public-sector labor conflict and to provide a mechanism for resolving disputes when they arise.

" * * *

"In *State of Ohio*, SERB held that, in order to sever an existing bargaining unit, there must have been 'substantial changes' or inadequate or disparate representation of the petitioned-for employees. The standard established by SERB is in accordance with the Act, because it preserves labor stability by permitting severance only where severance is in fact justified. SERB did not err in applying *State of Ohio* to Appellant's position."

In *Ohio, supra*, SERB addressed an argument by a representative that a petition to sever a group of employees from an existing bargaining unit is no different from filing a petition in an original unit determination case. In rejecting this contention, SERB provided the following rationale:

"There is nearly universal agreement that determining an appropriate bargaining unit in an original action is vastly different from disturbing an existing bargaining unit that has been functioning for some years. While the former calls for consideration of community of interest and other factors of the kind referenced in O.R.C. § 4117.06(B), the latter calls for a demonstration of extraordinary circumstances in order to overcome a presumption that the existing unit is appropriate. The policy of protecting existing bargaining units is rooted in the realization that labor relationships are as complicated and fragile as all other human relationships. Consequently, stability and predictability are keys to their success. Preserving well-functioning Board-certified units promotes orderly and

constructive relationships between public employers and their employees and allows SERB to comply with the mandate of O.R. C. § 4117.22. The statute must be construed to promote such relationships." *Ohio, supra.*

■ As noted by appellees, absent from appellant's brief is any reference to the applicable standard of review to be applied to SERB's interpretation of R.C. Chapter 4117. That standard of review was noted in *State Emp. Relations Bd. v. Miami Univ.* (1994), 71 Ohio St.3d 351, 353, 643 N.E.2d 1113, 1115–1116, in which the court held:

"In assessing SERB's policy, this court must afford deference to SERB's interpretation of R.C. Chapter 4117. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264, paragraph two of the syllabus. The General Assembly has entrusted SERB with the responsibility of administering the statute, and has bestowed upon it the special function of applying the statute's provisions to the complexities of Ohio's industrial life. In so doing, it has delegated to SERB the authority to make certain policy decisions. Our review is limited to whether SERB's policy is unreasonable or in conflict with the explicit language of R.C. Chapter 4117. Id. at 260, 533 N.E.2d at 266; *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 496–499, 613 N.E.2d 605, 613–615. See, also, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 865–866, 104 S.Ct. 2778, 2793, 81 L.Ed.2d 694, 717."

As cited above, in *Ohio*, SERB distinguished between the determination of an appropriate bargaining unit in an original action, requiring application of the factors in R.C. 4117.06(B), and a petition seeking to sever an existing bargaining unit. SERB concluded that the latter situation "calls for a demonstration of extraordinary circumstances in order to overcome a presumption that the existing unit is appropriate." *Ohio, supra.* In so holding, SERB gave recognition to a policy of preserving existing bargaining units, finding such a policy to be in keeping with the purpose of R.C. Chapter 4117. Upon review, we conclude that SERB's policy in addressing petitions seeking to sever an existing bargaining unit is neither unreasonable nor in conflict with the Act. We find nothing in the statute that would preclude SERB from giving consideration to factors such as the history of collective bargaining, the existence of a conflict of interest between the petitioned-for employees and other employees in the unit, changes in the employer's operations, and the nature of the job classifications, job duties and working conditions, "or other circumstances of the petitioned-for employees." R.C. 4117.06(B) itself contemplates that, in determining the appropriateness of a proposed bargaining unit, the board shall consider "other relevant factors." In

the instant case, the trial court determined that the standard established by SERB in *Ohio* is in accordance with R.C. Chapter 4117 because "it preserves labor stability by permitting severance only where severance is in fact justified." We find no abuse of discretion by the trial court in its determination on this issue.

In the proceedings before the administrative agency, both the hearing examiner and SERB found that no substantial changes had occurred within the bargaining unit represented by AFSCME. The record indicates that AFSCME has been the deemed certified exclusive representative for DHS employees for approximately twenty-eight years. SERB found, based upon the collective bargaining history of this unit, the lack of a showing of inadequate representation, the constructive, orderly and mutually beneficial relationship between AFSCME and the employees, the number of employees serving on negotiating committees and appointed to serve on labor/management committees, and the number of grievances filed by AFSCME on behalf of employees, that the factors set forth in *Ohio* had not been met by the appellant. As noted in the trial court's decision, appellant stipulated before SERB that it could not carry its burden of proof with respect to those factors. Upon review, we find that the trial court did not abuse its discretion in finding that the order of SERB, dismissing appellant's petition for representation election, was supported by reliable, probative and substantial evidence and was in accordance with law.

Based upon the foregoing, appellant's first, second and third assignments of error are overruled and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

BROWN and TYACK, JJ., concur.